The next case is number 21-1700, United States v. A.M.R.H. At this time, would counsel for the appellant introduce herself on the record to begin? Good morning. May I please record? I'm Joanna Leroy of the Federal Public Defender. On behalf of A.M.R.H., whom I will refer to as I'm him. May I please reserve three minutes for rebuttal? I'm sorry, I didn't hear who you refer to as what? I'm him. Okay, three minutes for rebuttal. First of all, counsel, welcome. I know you both came from Puerto Rico, so I think it's a little cooler here. Thank you, just a little bit. Okay, so let me first, in order to expedite some of the issues, I know both you and the government concede that the final calculation exceeded statutory minimum. So there's no disagreement as to that, so you need not go into that. I think, and let me, I'll pose you what I think some of the important questions are. You make the argument of, and again, we're familiar with the facts. So as to substantial assistance, you're arguing that, I understand, that George Besosa should have considered substantial assistance. This is not a mandatory minimum case. So what you're saying is no letter is required or no motion, and as part of the 3553A factors, it can be considered as another sentencing factor. Yes, Your Honor, and I just note that these are sealed materials, so we refer to that as extraordinary mitigation in this case as notified to the court. But, yes, that is the crux of our argument here, essentially, that even if there was, I mean, there was a miscalculation, that's conceded. But the proper remedy is not simply remand to fix that calculation. The sentence in and of itself constituted an abuse of discretion because of how unreasonable it was. And it was so unreasonable because the court did not consider, it's not that it weighed it in a way that we did not like, did not consider at all the extraordinary mitigation in this case. And we know that there's no ambiguity as to whether or not we considered it because at the admission hearing, which is equivalent to a change of plea hearing, the court noted that, exactly as Your Honor says, that it could not consider the extraordinary mitigation in the absence of a motion by the government, which is an incorrect interpretation of law. And that would, per se, would be a procedural error. You'd have to send the case back for it. Exactly. So if you prevail on that claim, it gets sent back to resentencing. Exactly, and that's the remedy that we're requesting here. And let me ask you, let's assume, taking into account that extraordinary evidence, let's assume the judge says, well, I'll take six months off. What you're saying is, or at least the judge would say, I consider it. I'm not going to give you anything in the exercise of my discretion. But he has to consider it. That's exactly right, Your Honor, because we can't say what the court below has to do in terms of the sentence imposed, but it does have to consider the mitigation in this case. And this court has held that to completely neglect a factor that is entitled to substantial weight is an abuse of discretion. That is exactly what happened here. It needs to articulate its reasons in both weighing the aggravating and mitigating factors here. And that just did not happen at all. And this is, again, in light, in the context of the parties were requesting, they had a plea for probation, and the court ignored that, ignored the mitigation, focused purely on punitive factors, and imposed what was functionally a statutory maximum sentence. And I say that because the court could have given up to 60 months of incarceration and detention, and with good time, which we know applies to juvenile proceedings, that would have been about 51 months. The court imposed 49 and a half months, so it was only a month and a half difference, and it also imposed 17 months and 27 days of supervision. So it was arguably an even harsher sentence. So without considering any mitigation whatsoever, and in this case, again, I have to emphasize that Angel took extraordinary steps to mitigate the damage that he did. I'm just trying to get the precise argument. Okay, you say there was an error of law because the district court said it wouldn't consider substantial assistance because there was no government motion, and that is the key argument on which you say you're entitled to a remand. But you keep talking about extraordinary mitigation, and that seems to go well beyond any notion of whether there was substantial assistance, which is kind of a term of art. It's true your client cooperated, but it's also true that he did not name names, and he withheld information. So my question goes to this. Are you arguing that even if there was no error of law about substantial assistance, that the sentence was nonetheless unreasonable? Well, at first I would just have to say that local rules of this court prohibit me from speaking specifically as to those matters, but I would refer the court respectfully to the notice that we filed last week to see in more detail. You conclude the argument quite general. Okay, yes, and I would just say that the characterization, by Your Honor, respectfully, was not correct. He did do a lot of those things, and, again, that's specifically in our briefings and in the notice to the court, so I would refer the court to exactly the steps that Angel took in this case because he did everything possible, I would just say. No, no, no, excuse me. Okay, you're saying that the record will show something different as to substantial assistance. It doesn't, yes. But my question to you was substantial assistance drops out of the case. Are you saying that the sentence was nonetheless unreasonable for other reasons? Well, no, zero mitigation was considered at all, which was submitted in a sentencing memorandum. Okay, you keep talking about the term mitigation. That is different than the issue of substantial assistance. That's what I've been trying to get you to answer. Well, Maya, I would say that they're actually, in this particular case, they're not different because the guidelines don't apply to this proceeding. Let me, but what you're saying is, and I've seen this hundreds of times in sentencing where there's no mandatory minimum, and somebody tries to cooperate, doesn't fully, and there's no issue with that, but I can still, as a judge, sentencing judge, say, did he cooperate a bit or, you know, maybe it wasn't 100%, but was he straightforward with what he provided? Did he provide X, Y, or Z? And, again, you can consider that as part of 3553. That's what you're really arguing. Well, yes, and I would also say that 3553 doesn't apply to juvenile proceedings either. Those are adult proceeding factors. But it's analogous. You have to consider all the possible mitigating, aggravating factors. Yes, exactly, exactly. That's true in both adults. I'm saying it as an analogy. Yes, yes, that's exactly right, that the court is required to consider all the record before, which is both aggravating and mitigating factors. The court 100% completely omitted the mitigating factors here, and because the guidelines don't apply here, the extraordinary mitigation of substantial assistance, that was part of the mitigation here. In fact, it was the reason why the parties did not refer. First of all, the government did not transfer this case to adult jurisdiction. It was why the parties recommended probation. And it was completely ignored by the court here. And I would also say that ---- Let me ask you, did Judge Bessels at any point ask counsel for the government, can you tell me to the extent of what did he, you know, in the juvenile's brief, this is what they're saying, did he at least cooperate to that extent? That wasn't even considered. The judge said, give me a letter or a motion, otherwise I will not consider it. Flat right, correct? Exactly, and that mention was only at the admission hearing, which is like the change of plea hearing. At the sentencing itself, at the disposition hearing, there was no mention whatsoever, I can't emphasize that enough, no mention whatsoever by the district court as to the extraordinary mitigation of the substantial assistance in this case. That's what constitutes abusive discretion. There was, instead of, only focused on these 3553 factors, which again we have briefed that does not apply necessarily to juvenile proceedings, the Ninth Circuit has held that the spirit is the purpose of the FJDA, which includes rehabilitation, taking consideration of special vulnerabilities, needs, potential for rehabilitation of the juvenile, that's supposed to guide the disposition, not 3553, because that focuses more on the offense itself, punishment, which is not the purpose of an FJDA proceeding. And in doing so, it imposed essentially a statutory maximum, the court imposed essentially a statutory maximum sentence, and that's highly problematic. And I also want to highlight that the designation issue here, the fact that I'm going to ask you about that. Let me ask, before we get to that, two questions. First of all, you're asking that if the case is remanded, it not go back to Judge Bezos. And I note that that's, I may call it a sort of policy from your office, because in all the Judge Bezos sentencing cases, it's kind of like presumably you're going to ask for that. But why can't he sentence if we, you know, like all district judges, he's been affirmed many times, he's been reversed other times, but why can't he follow the court's instructions? Well, I mean, whether or not he can follow the court's instructions, I'm not sure, but all we can see from the record is he showed a complete disregard for the FJDA. This court did nothing different than it would have done in an adult proceeding. The other issue here is that he was the presiding judge over the other two offenders in the same string of carjackings, and so he had access to other records that Anheil had no opportunity to cross-examine any of that evidence, and it was used in this case. So that's another sort of inappropriate piece of this. If the court were to find that it goes back to the same sentencing judge, the same disposition judge, we would just request that it come with instructions to follow the FJDA and to consider the mitigation in this case at least to some degree, which is just what did not happen. If I can call it your fallback position is that we do a limited remand to at least correct the judgment. Is that right? We don't believe that's a sufficient remedy. And especially, I mean, that has to be done because the statutory maximum is passed. That is conceded. Do you and the government, I read you as agreeing on exactly how that correction of the judgment should read, but then I go to your brief at page 25, and this may get too complicated for the time we have here, but you calculate the appropriate supervisory period as 11 months and 13 days. Is it 10 months and 13 days? Yes, that's a typo. Okay. Yes, exactly. It should be 10 months. And that's only assuming that if the court does make the adjustments, because it's sort of a sliding scale with the supervision and the term of incarceration that add up to the 60 months. That's making a sort of dangerous assumption that the court would want less supervision and more detention, which we don't know that for sure. And given that if the court had known – We know what the court said at the sentencing, right? He said until age 21, but that was with the understanding that it was only 42 months. If it had known that it was 49 months, we don't know that it would have wanted that high of a term of incarceration. And given that we're just talking about the liberty interest of a juvenile, it's very dangerous to make that assumption. And it's just one more reason why this should be sent back for a proper disposition hearing, again, with all of this information present. Do you want to address the issue of the failure to recommend a juvenile facility and how the Patrick case might – Yes, I think that's significant because we have some important precedent in this jurisdiction. And I assume your argument is Patrick controls – Yes, absolutely. And, again, the judge – of course, the juvenile goes to custody of, I guess, the attorney general. But the judge has to at least make that recommendation. Yes, exactly. First of all, the judge – the court in this case sent him to BOP, not to the attorney general. And that's significant because the attorney general has experience, and the court has said in Patrick v. that it is ultimately the attorney general's decision as to what facility to send the juvenile to because there are important considerations in the facility where they'll be serving their term of detention. The court also held that – Counsel, the Department of Justice defending this case has said that federal juvenile defenders cannot go to this state facility. There's no provision for it at all. And, therefore, the judge didn't commit any error. And in any event, if he did, it was harmless. So I don't quite understand the argument that's being made here. Well, this court has taken a different position on that because it found in Patrick v. that if the court were to be presented with – because it was uncomfortable with the record below, which is similar to the situation, that no information was provided to the court as to the appropriate facility for this particular juvenile. Had it had sufficient information, and it turned out that there was no appropriate state facility, it may have mitigated that problem by lowering the sentence, by providing a disposition that included a lower term of detention. And so it remanded on those grounds to allow the court to make that assessment. So basically, you would like the judge to revisit this issue. Yes. Let me ask you, are you aware because you were asking that he be placed in the Villalba facility, correct? And you know that's under a federal consent decree. That facility is of many, many issues we're not going to. But you would still be requesting that facility or an alternative? Yes, we would request Villalba, or at the very least for some sort of informed analysis to be done as to if there is a facility. Isn't your better request to have a hearing about where the most appropriate facility is for your client? I mean, I think that could be included in the entirety of the disposition hearing. I know when Patrick v. was limited to that hearing, but that was because the court found that the sentence itself was not unreasonable. Here we argue that it is unreasonable and that there needs to be more information provided as to the facility. So I think that could all be done in one hearing, which I don't think is that onerous on the district court because we know at the very least a new calculation has to be done. We're not asking for a new trial or anything that elaborate. It's just to go back and revisit these issues at a new disposition hearing. And it's very significant, the designation issue, because the court may, upon a finding that there is not an appropriate facility, which was never done, the court may want to lower terms of detention to mitigate that issue because there is a presumption against warehousing these juveniles away from their families, away from their communities. Counsel, I take it you're taking the position that there is no appropriate federal facility because there is not a federal facility in Puerto Rico? In Puerto Rico, there would not be a federal facility, but again... Okay, so let me spin that out. Why wouldn't the same rule apply stateside in the continental U.S. if there were not a federal juvenile facility in the particular state or region in which the juvenile lived? Do we really want to set a precedent that, therefore, you're entitled to a lower sentence? We don't argue that he's necessarily entitled to a lower sentence. That is within the ambit of the district court to make that decision. Okay, so it's a per se rule if there is no federal juvenile facility close to the juvenile defendant's home, that the district court has to have a hearing on what is the most appropriate facility and consider reduction in the sentence. I wouldn't say that the court found a per se rule in Patrick v., but it did remain on the grounds that... No, no, no, I'm asking about your position and the logic of your argument. I wouldn't presuppose a per se rule. I would just say the facts of this case under First Circuit precedent weren't remanded because the court was insufficiently informed and with sufficient information asked the facility, if it turned out that there was nothing appropriate for Angel, that it may have decided to lower the term of detention to mitigate that problem. We just don't know, and because we don't know, if the appropriate remedy is a new disposition hearing with sufficient information before the court. The court needs to be informed because this court held that as part of the district court's authority to impose a term of detention under the FJDA, that comes with a responsibility to do due diligence as to the facility in which it will be serving a term of detention. I can only keep it now to the particular facts of this case, which match Patrick v. and the precedent controls here, that the appropriate remedy is to be remanded for that consideration, and also we're arguing for, because the sentence was unreasonable altogether, it was a very high term of incarceration. How long has he served already? He has served about 41 months. He has eight months remaining of his sentence, which we know every minute of that sentence of detention. I wanted to ask that because I assume it's, I don't know if you requested it, but you're asking we expedite to the extent possible. Yes, exactly, because he's already served so much, and given his age, and as the Supreme Court has found their vulnerabilities at that age, away from the community, it's so significant, so traumatic, so every day that he's there is important, so we would request remand for a new disposition. Let me also ask you, you're asking for a comprehensive study. Where in the law is that required? Because I know there's no objection below to a sort of pre-sentence report, and this is an issue I think that's been raised in the appeal for the first time. Yes. Well, in terms of the report itself, under 5037E, that is if the court does desire more information, there is a mechanism for that, and it's a comprehensive study that includes the personal traits of the juvenile, if they have any past delinquency, any psychological needs that need to be addressed. That's similar to the factors when you decide to transfer or not transfer, correct? Somewhat similar, but the transfer focuses more on the offense itself, whereas the comprehensive study focuses more on the juvenile. I think you only cite a state case where that has been done. You don't cite any federal cases requiring it. So you would be asking us to be the first, I guess, appellate court to require this, correct? Well, the fact is there's not much litigation under the statute, so it's not that it's this incredible precedent. It's just not seen very often. And we're not saying that it's required. It's only if the court does indeed want more information. Instead of ordering a PSR, the appropriate mechanism is the comprehensive study, the predisposition report under 5037E. That's just a statute requirement if the court so wants more information, and the court did want more information in this case. Okay. Thank you, Counsel. You have three minutes for rebuttal, so let's then hear from Mr. Conner from the United States. And, Mr. Conner, you heard when I separated all the arguments, so respond in whatever order you want. You know what the questions have been, so. Thank you, Judge Helpe, and I'll try to go in order. For starters, good morning. May it please the Court, Greg Conner for the United States. The government's position is that this court should affirm the juvenile detention until AR reaches the age of 21 based on the dual objectives that this court recognized in Patrick v. of rehabilitation on the one hand and protecting society from the growth of youth violence on the other. And something that was already brought up by the panel, we do believe the combined period of detention and supervision exceeded the statutory limit, so we're asking for a limited remand, which would not require a hearing, to correct the months and days calculation. Now, as an initial matter, and opposing counsel alluded to this, there is not much litigation under the federal act, and whatever difficulty would ordinarily arise from that lack of case law on this statute, we think is made somewhat easier in this specific case, because the parties were acting in general agreement until the disposition. And that's in stark contrast to the position that the defense takes on appeal, and even at argument today, saying that the district court totally disregarded the juvenile delinquency act. I think we laid this out in our brief in several ways, both in requesting a PSR, in recommending that the district court consider the 3553A factors in their sentencing memorandum, that's in the agreement between the parties. So what you're saying is the juvenile's counsel below referred to 3553A? Not only referred to it, specified just punishment, deterrence, and respect for the law as factors that the district court should consider. And those are considered with the juvenile FJDA, correct? Correct. And we refer the court to both the invited error doctrine and judicial estoppel, but primarily relying on invited error to say that there is normally a consequence to taking a position in district court, and then taking a position on appeal that is in such stark contrast. And remember, they're pretty critical of the district court in every aspect of this. They say that he should not have called it a sentencing proceeding. They call their memorandum a sentencing memorandum. They say he should not have considered 3553A factors or done anything analogous to what you would do with an adult defendant, and yet they made those arguments below. I don't think you can reconcile easily what they said below and what they're saying on appeal, and I do think that should have an impact on their arguments regarding the length of the detention. What about the argument made about substantial cooperation? So this loan statement in the change of plea equivalent, I don't think irreparably tainted the entire proceedings that it requires reversal, including because the defense for AR referenced his assistance in their memorandum. The district court starts out the disposition hearing by saying, I've considered that, and then when they finally object to the term of detention, they say you placed too little emphasis on mitigation, implying that he did consider it. But the judge, which is not required, said, I need the motion filed by the government. Do you agree with that? Again, I think that was wrong. I don't think it amounted to reversible error when that was referring to 5K1 under the guidelines. The guidelines don't apply here. And the district court indicated that it had considered AR's arguments, including his assistance argument. But he basically said, I'm not going to help you unless I get a letter from the government. No, I think I'm suggesting a reverse order. The initial statement, which is wrong under, I think it's the LeDrone case, but it's wrong because you can consider that even under the 3553A factors for an adult defendant. Whatever misstatement the district court made, I don't think tainted the proceedings because the district court made clear it understood the guidelines don't apply at the disposition hearing. It considered the fact that he cooperated and it tempered the consideration of punishment by saying, I recognize that COVID-19 was an issue with how long this took, so I'm going, at least for detention purposes, I'm going to consider you a juvenile under, I think it's 5037C1 rather than C2. Let me also ask you, wouldn't, I know you're arguing otherwise, but there's also the possibility that the court could do a part two limited remand. Judge, explain, did you consider those factors or you understood, you know, and he said no, I will not do it after the letter or just simply remand as to whether he will consider, you know, it could be the same result, it could be different. I think if you look at the totality of the record, it indicates that the judge was aware that there was assistance in this case and that he could consider it. And that comes from the facts. Counsel, you're saying this was an erroneous statement, but it was made at the change of plea. When it got to actual sentencing, the judge said or disposition, I did consider his cooperation and that was in fact argued by the defendant. I want to know what the government's position was. Did the government ever say to the district court, you should consider cooperation, but you should also consider the limits of the cooperation? Did the government ever say to the district court, no, you were wrong in saying that you couldn't consider cooperation without a letter? I don't think either party corrected the district court and said that that was a misstatement based on this court's precedent in the LeDrone case. I don't think either party did that, but both parties agreed to jointly recommend probation, which was an obvious resolve of this defendant. And with that joint recommendation, it was really unnecessary to go into the cooperation because you're both requesting probation, correct? That's correct. I get to the point. Everybody would presume maybe there's going to be probation. Well, we recommended probation at the time of the disposition hearing, which I think is consistent with Patrick B. saying you should consider the dual objectives of juvenile detention. But when the government agrees to recommend probation as part of that recommendation, the government never told the judge, even though there is no substantial assistance in our opinion, there was still some degree of cooperation, which is something which I saw in the past in sentencing hearings. Judge, we couldn't get everything we wanted. You didn't have all the information. But nonetheless, he came out in good faith. You can consider that. That didn't happen there. I don't think there was elaboration to the extent you're suggesting is possible. But I think it was. If the government was at fault, the defense, likewise, somebody should raise it at some other point to a greater extent, correct? If either party was under the impression that the district court believed it couldn't consider assistance, I think one of the parties would have said that. This is what I was referring to earlier. The parties were generally in agreement that it was a factor that would lead both parties to recommend probation that was laid out in a thorough sentencing memorandum. And the district court said, I appreciate that. I reviewed that memorandum. I reviewed the recommendation for probation by both parties. I happen to disagree and think a term of detention is called for. And I think that undermines any suggestion that the district court was still under the misunderstanding that he could not consider AR's assistance. What is your take on Patrick and the issue of inquiring into the facility where the juvenile is held? Well, first of all, Vialba is a predisposition facility. And the contract with that state facility is limited to the amount of time before the disposition. There is not a federal juvenile facility on the island. And the problem with whether it's plain error, which we're contending that it should be plain error because they don't object when the district court rejects Vialba as a possibility. Whether it's plain error or ordinary harmless error, they're going to have to show prejudice. And I don't think Patrick V., which specifies that it's deciding as it did because it's a case of first impression, I don't think that establishes harmless error or prongs three and four of plain error where there is an absence of a non-binding recommendation that, again, the statute says whenever possible, the juvenile should be located in his community. It wasn't possible in this case. So I don't understand how the district court made reversible or vacatable error by making a recommendation or really rejecting a recommendation that just wasn't possible. I guess one read of Patrick is to just kind of put aside the detainment juvenile in a facility within the community, right? Because I think it's true that there's no facility in Puerto Rico. There's no federal facility in many states. Does the court, assuming that's true, does the court still have an obligation in a juvenile case to balance or to at least learn and consider as part of the sentencing where the juvenile is going to be incarcerated? I think it would be too presumptuous to do that because the district court would not be able to ascertain where the likely facility is. The BOP still has to follow the statute, but the BOP is going to make that determination based on availability in the given facility. In other words, a district court is not going to be able to predict that. So I'm not sure. And by the way, the only reason Patrick V. had any sort of hearing on that is that individual was already placed. The error they're alleging is way before that. Before BOP places or the attorney general places an individual juvenile, they suggest that it's reversible error not to make a non-binding recommendation. And I just don't think Patrick V. supports that. In fact, Patrick V. recognizes that ordinarily it's going to be left up to the discretion of the attorney general. So again, I would submit that a close reading of Patrick V. does not create the precedent for the first two prongs of plain error. And I don't think plain error or harmless error, I don't think AR can show prejudice in this case. Let me ask you. Go ahead. I have some separation of powers concerns here. Congress assigned this to the Bureau of Prisons to come up with the most appropriate facility. And I don't know of any case which says that that is the authority of the sentencing judge. And as given the mechanics of the system, I just don't see how that could possibly work. And I didn't read Patrick to say anything of this sort. But that does seem to be the argument that is being made to us. And I agree that it would create a problem to require an Article III judge to do something that is within the discretion of the executive. So I think that's one more. Patrick V., again, seemed to focus on the absence of information in the council's recommendation, in what the district court was doing, and remanded based on the absence of information in a case of first impression. That's not what you have here, and I really don't think there's anything that establishes prejudice. Let me ask you a final question. Let's assume the case gets remanded, not only for the supervised release issue, but any of the other issues that would require another dispositional hearing. Does the government have any objections or any reasons to understand that Judge Bessosa should not preside over this hearing? If no issues, why? Yes. So we cite the Vasquez-Mendez case, which says that you're only supposed to remand to a different district court judge in very unusual cases. They don't make the argument in the opening brief why this is a very unusual case. And other courts of appeals decisions, remanding to different district court judges, do so when there's an indication of bias or an indication that the district court would be incapable of reconsidering what the court of appeals says. Does the government have any indicia that this is a judge who would not follow instructions? No, no. And let me ask you, the fact that he may be a tough sentencer when it comes to violent crime, is that a reason not for him to get the case upon remand? Should it be remanded? Arguably, he's going to follow the instructions. No, and we filed a 28-J letter to point out that A.R.'s co-carjacker was sentenced as an adult, and this court said that the district court permissibly considered the violence of the six carjacking offenses. So I don't think Judge Bezosa has done anything out of the ordinary and that this court hasn't already approved of. Okay, thank you, counsel. Thank you. Okay, we have three minutes rebuttal. Ms. Leroy. Thank you. I'd like to make three points in regards to the government's argument. First, I'd like to clarify our argument regarding Patrick B. and the commitment facility. Our argument is not that the court's authority, district court's authority, supplants B.O.P.'s authority. First of all, again, we're misreading the statute. It's the A.G. who makes the determination, not B.O.P., and that never happened. He was not referred to. But B.O.P. is under the A.G.'s umbrella. Right, but I think that the A.G. Move on, please. Okay, yeah, that's not necessarily significant. What's significant is that Patrick B. held that had the court known that there was no facility available, it may have imposed a different disposition. It may not have imposed such a high term of detention. That's what's significant here, not the fact that, you know, their decision is nonbinding. It's the fact that had some analysis been done, had some information been provided. The court did know that here. I would argue that it did not. I mean, it just assumes without any information provided. Was there any objection or any request to preserve that issue? Yes. I mean, the defense counsel below requested that he stay in Villalba, and the court immediately said no and moved on. So it was preserved here, which is why they're not playing there. Okay, but it's just like it was told, just keep him in Villalba. But there wasn't a request, judge, you know, you should consider these other facilities in the mainland or keep him in Villalba because this can be considered to mitigate a sentence. That was not requested specifically below. Not in those elaborate terms, but we still would argue that it was preserved. Even under plain error, there is prejudice because he was then sent to a facility with a stat max sentence that may not have otherwise been imposed in that facility. We don't know that the correct services were provided for him. Again, that's outside of the spirit of the FJD. That's very significant where he serves at such a delicate age. Let me ask. These issues you're raising appeal, and, again, they may not have been elaborately raised before. I assume, or I have to assume it's because you had an agreement and we're going to recommend probation. And when this happens, I don't know why it wasn't preserved, but, you know, after the court's disposition, there's no formal objection. Judge, we object to X, Y, Z. That didn't happen also, correct? Well, there was objections to the unreasonability of the sentence and for the lack of consideration of the mitigation, which is the crux of our argument. But that would be like a substantive reasonableness. That's overall. Why get whatever number of months they should get on probation or a year or something lower. That objection was made, and that was preserved. But that doesn't necessarily cover some of these other points. It's either plain error or it's a higher standard. Yes, and that was one of the points I wanted to address. Even if we sort of sever the PSR issue, the 3553 issue, which we do not concede were waived, but if the court wants to find that, they're not dispositive here. What's dispositive here is the unreasonableness of the sentence, and complete and utter lack of consideration of the extraordinary mitigation. That constitutes an abuse of discretion in and of itself. Excuse me. Your brother counsel said that you argued mitigation in your sentencing memorandum. I don't know if it was you, but someone in your office. Yes. And that the court specifically said, and I have considered mitigation, and I have considered the assistance he gave. I apologize. Are you disputing that? Yes, Your Honor. If you look at the transcripts of the disputation hearing, that was never stated. All the court states is that it read the sentencing memorandum, but as we know from the admission hearing, the change of plea, it believes that it could not consider that information. No, that came earlier, and then the court said, I considered the sentencing memorandum. So why should we disbelieve the court when it said, I considered the arguments that you made in the sentencing memo? Well, even if it read the sentencing memorandum, it believed it could not give any weight to that. That's what's important. No, no, no, no, no. Well, even if not. It may have made a mistake in its statement earlier,